IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANET L. MYLER,                                         6:13-cv-02037-MA

              Plaintiff,                        OPINION AND ORDER

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.


DREW L. JOHNSON
1700 Valley River Drive
Eugene, Oregon 97405

JOHN E. HAAPALA, JR.
401 E. Tenth Avenue, Suite 240
Eugene, Oregon 97401

     Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

///

///

///


1 - OPINION AND ORDER

GERALD J. HILL
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

    Attorneys for Defendant


MARSH, Judge

    Plaintiff, Janet L. Myler, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) disability benefits under Title XVI of the Act. <u>See</u> 42 U.S.C. §§ 401-434, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I reverse the final decision of the Commissioner and remand for an immediate calculation of benefits.

<u>**PROCEDURAL BACKGROUND**</u>

    Plaintiff protectively filed the instant application for SSI on January 20, 2010, alleging disability due to diabetes, neuropathy, and chronic nausea. Tr. 118. Plaintiff's claim was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) presided over a hearing on May 23, 2012, at which Plaintiff testified and was represented by counsel. Tr. 35-51. On June 6, 2012, the ALJ issued a decision denying Plaintiff's claim. The Appeals Council declined review and Plaintiff timely appealed to this Court.

///

2 - OPINION AND ORDER

## FACTUAL BACKGROUND

Born on February 5, 1968, Plaintiff was 41 years old on the application date and 44 years old on the date of the hearing. Tr. 128. Plaintiff has a high-school equivalency and no past relevant work. Tr. 25, 119. Plaintiff initially alleged her conditions became disabling on January 1, 2001, but later amended her alleged onset date of disability to January 20, 2010, the application date. Tr. 36-37, 128.

In addition to her hearing testimony, Plaintiff submitted an Adult Function Report dated March 14, 2010. Tr. 132-39. On March 30, 2010, Dorothy Anderson, Ph.D., reviewed Plaintiff's medical records and submitted a Psychiatric Review Technique. Tr. 330-42. Linda L. Jensen, M.D., reviewed Plaintiff's medical records and submitted a Physical Residual Functional Capacity Assessment. Tr. 344-51. Rodney D. McDowell, LCSW, Plaintiff's primary mental-health treatment provider, completed a Mental Residual Functional Capacity Assessment and submitted a letter detailing Plaintiff's psychological conditions and describing her treatment history. Tr. 361-66. Prachi R. Garodia, M.D., Plaintiff's primary care provider, submitted a letter detailing Plaintiff's medical conditions. Tr. 367.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v.

3 - OPINION AND ORDER

Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One the ALJ determined Plaintiff has not engaged in substantial gainful activity since the application date, January 20, 2010. See 20 C.F.R. §§ 416.920(b), 416.971 et seq.; Tr. 15.

At Step Two the ALJ determined Plaintiff's diabetes mellitus with peripheral neuropathy in the lower extremities, depression, anxiety, right carpal tunnel syndrome post release, mild bilateral ulnar neuropathy at the elbows, recurrent nausea and vomiting, and marijuana dependence were severe impairments. See 20 C.F.R. § 416.920(c); Tr. 15-16.

At Step Three the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 416.920(d), 416.925, 416.926; Tr. 16.

The ALJ found Plaintiff has the residual functional capacity (RFC) to perform light work, but further limited Plaintiff to "unskilled work involving routine tasks;" never climbing ropes, ladders, and scaffolds; occasionally climbing ramps and stairs;

frequently balancing, stooping, kneeling, crouching, or crawling; and avoiding concentrated exposure to hazards.  In the alternative, the ALJ additionally limited Plaintiff to occasional handling, fingering, and feeling.  Tr. 18-25.

At Step Four the ALJ found Plaintiff has no past relevant work.  See 20 C.F.R. § 416.965; Tr. 25.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including Cashier II, Office Helper, and Storage Facility Rental Clerk.  In the alternative, including the handling, feeling, and fingering limitation, the ALJ found jobs exist in significant numbers in the national economy that Plaintiff can perform, including Counter Clerk, Greeter, and Bakery Line Worker.  See 20 C.F.R. §§ 416.969, 416.969(a); Tr. 25-26.

Accordingly, the ALJ found Plaintiff is not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises three issues on review.  First, Plaintiff argues the ALJ improperly rejected her testimony.  Second, Plaintiff asserts the ALJ cited insufficient reasons to reject Dr. Garodia's opinion.  Finally, Plaintiff submits the ALJ improperly rejected Mr. McDowell's opinion.

///

///

5 - OPINION AND ORDER

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u>  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.   <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).   If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.   <u>Andrews</u>, 53 F.3d at 1039-40.   If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.   <u>Plaintiff's Credibility</u>

Plaintiff first argues the ALJ improperly rejected her testimony.   In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis.   20 C.F.R. § 404.1529.   First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be

6 - OPINION AND ORDER

expected to produce the symptoms alleged.  Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so.  Id. at 1281.  The ALJ's reasons for rejecting a claimant's testimony must be supported by substantial evidence in the record.  See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).

If an ALJ finds the claimant's testimony regarding her subjective symptoms unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive."  Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  In doing so, the ALJ must identify which testimony is credible and which testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."  Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).  The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing Plaintiff testified she was disabled by chronic pain in her lower back, hips, and legs; nausea; vomiting; and depression.  Tr. 37-38.  Plaintiff reported she experiences numbness in her hands and fingers when she bends her wrists, and

while surgery helped somewhat, it did not entirely resolve her symptoms. Tr. 38. Plaintiff testified her diabetes has caused her to suffer "a couple of seizures from low blood sugar." Tr. 39. With respect to pain medication, Plaintiff reported she takes "a pretty strong narcotic." Tr. 39. As to her nausea, Plaintiff reported she vomits three or four days per week and that spells of nausea and vomiting can "last for hours." Tr. 41. Plaintiff reported she uses marijuana to treat her nausea and that her nausea became worse when her doctor asked her to abstain from marijuana use. Tr. 44. Plaintiff testified that her diabetes was under poor control because of financial and insurance complications. Tr. 42-43. Plaintiff testified she will at times "stay in bed for days" as a result of her depression. Tr. 43.

As to her activities of daily living, Plaintiff testified she does "very little cooking," and does laundry one day per week. Tr. 39. Plaintiff reported she cares for her dogs and can do some cleaning, including vacuuming and washing dishes, but that she frequently rests by laying down or reading. Tr. 40. Plaintiff reported she can lift up to 15 pounds with some difficulty, cannot sit for very long without her legs beginning to swell, can stand for approximately five minutes at a time, and can walk two blocks. Tr. 40.

Plaintiff reported similar activities of daily living in her Adult Function Report. Tr. 132. Plaintiff wrote that the pain in

her legs causes her to lose sleep, personal-care activities take longer than they used to, and she "sometimes needs help getting off the toilet." Tr. 133. Plaintiff reported that she does housework twice a week for two-to-three hours and shops for groceries once per week for a "couple hours." Tr. 134-35.

As to her functional capabilities, Plaintiff marked that her conditions affect her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, and use her hands. Tr. 137. Plaintiff wrote that she cannot lift more than 15 pounds, can walk approximately one block, and tries to avoid stairs. Tr. 137.

The ALJ listed six reasons for rejecting Plaintiff's testimony. First, the ALJ reasoned that Plaintiff's activities of daily living are "quite involved" and thus inconsistent with Plaintiff's allegations. Tr. 23. Second, the ALJ found Plaintiff's sparse work history suggested that she is not motivated to work. Tr. 23. Third, the ALJ reasoned that Plaintiff's "long history of abuse of both legal and illegal drugs raises the question of whether she is motivated to improve her functional ability." Tr. 23. Fourth, the ALJ noted that Plaintiff left her previous employment in 1994 for reasons unrelated to disability. Fifth, the ALJ discredited Plaintiff's allegations because Plaintiff "has not fully complied with her medical treatment." Tr. 23. Finally, the ALJ rejected Plaintiff's testimony because she made inconsistent statements to treatment providers about weight

loss. Tr. 23-24. I conclude these reasons do not amount to clear and convincing reasons to reject Plaintiff's testimony and the ALJ therefore erred in his consideration of Plaintiff's credibility.

The ALJ's first reason for rejecting Plaintiff's testimony, Plaintiff's "involved" activities of daily living, is unconvincing. The daily activities Plaintiff described in her Adult Function Report and hearing testimony are not so involved as to undermine her allegations concerning her functional limitations. Plaintiff consistently testified that she performs a relatively limited range of activities around her home with significant rest breaks. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." Smolen, 80 F.3d at 1284 n.7. Neither the activities of daily living described in Plaintiff's testimony nor as revealed in an examination of the medical record undercut Plaintiff's testimony of disabling limitations.

The ALJ's second and fourth reasons for rejecting Plaintiff's testimony were Plaintiff's sparse work history and the fact that she left her employment in 1994 for non-disability reasons. From these facts, the ALJ found Plaintiff was not motivated to work and, thus, "factors other than her alleged impairments affect her ability to maintain fulltime employment." Tr. 23. Indeed,

10 - OPINION AND ORDER

evidence of a poor work history suggesting a claimant is not motivated to work is a proper reason to discredit a claimant's testimony that she is unable to work. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002). While the ALJ's citation to Plaintiff's sparse work history is not incorrect, it also does little to undermine Plaintiff's credibility. As the ALJ noted, Plaintiff reported she stopped working in 1994 because she "got married and . . . did not need to work." Tr. 119. The relevant period for Plaintiff's disability application did not begin until January, 2010, almost 16 years after Plaintiff stopped working on account of her marriage. Thus, Plaintiff's sparse work history does not strongly suggest a lack of propensity to work. This reason only carries marginal weight in discrediting Plaintiff's credibility.

The ALJ third cited Plaintiff's history of substance abuse, as well as current tobacco and marijuana use, to discredit Plaintiff's testimony because such use "raises the question of whether she is motivated to improve her functional ability." Tr. 23. Indeed, the record reflects ongoing marijuana use by Plaintiff that at least some medical providers thought may be contributing to her health problems. Tr. 434, 448. Additionally, Plaintiff made occasional inconsistent statements to medical providers concerning her marijuana use. Tr. 439, 448. Plaintiff's marijuana use as a contributing factor to her disability, however, is not a prominent theme throughout the medical record, and the ALJ's rationale that

Plaintiff's marijuana, tobacco, and historical use of other drugs indicate Plaintiff is not motivated to improve her functionality is unconvincing.  Thus, while the ALJ appropriately cited Plaintiff's marijuana use as a reason to reject Plaintiff's testimony, it carries at best modest weight in justifying the ALJ's rejection of Plaintiff's credibility.

The ALJ's next reason for rejecting Plaintiff's testimony, noncompliance with medical treatment, is also not a convincing reason to reject Plaintiff's credibility.  An "'unexplained, or inadequately explained, failure . . . to follow a prescribed course of treatment'" is a proper reason to reject a claimant's testimony. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012)(quoting Tommasetti, 533 F.3d at 1039).  While Plaintiff's medical providers occasionally noted noncompliance with her diabetes treatment, such providers usually noted such noncompliance was a result of financial constraints. E.g., Tr. 320, 409, 425, 433.  Indeed, the majority of Plaintiff's compliance  problems in the record appear related to financial constraints and poor access to medication and medical supplies.  Thus, because Plaintiff's instances of noncompliance were adequately explained by financial and social complications, this is not a convincing reason to reject Plaintiff's testimony.

Finally, the ALJ cited an inconsistent statement concerning Plaintiff's weight to reject her testimony.  Indeed, on January 12,

2010, Plaintiff reported to Andrew Cornwell, M.D., that she had lost 100 pounds in the previous year. Tr. 171. On that date Plaintiff weighed 210 pounds. Tr. 172. On January 1, 2009, approximately one year earlier, Plaintiff weighed 235 pounds. Tr. 242-43. Although Plaintiff's statement that she lost 100 pounds in the prior year was not accurate, this is not a convincing reason to reject Plaintiff's testimony especially in light of the fact Plaintiff lost considerable weight in the preceding year.

In sum, taking the above reasons together, I conclude the ALJ failed to cite clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's testimony. The ALJ erred in discrediting Plaintiff's allegations.

## II.  Dr. Garodia's Letter

Plaintiff next argues the ALJ erred in rejecting the letter submitted by Dr. Garodia. The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id. "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d

661, 671 (9th Cir. 2012) (quoting <u>Bray v. Comm'r Soc. Sec. Admin.</u>, 554 F.3d 1219, 1228 (9th Cir. 2009)).

   "'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" <u>Id.</u> (quoting <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003)).   The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. <u>See</u> <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008). Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony." <u>Id.</u>

   Dr. Garodia submitted a letter to the Commissioner listing Plaintiff's conditions, detailed his treatment history with Plaintiff, and informed the Commissioner that Plaintiff had recently been hospitalized on multiple occasions. Tr. 367. Dr. Garodia wrote that Plaintiff's hospitalizations were a result of Plaintiff's "multiple medical conditions," and Plaintiff's "emotional health." Tr. 367. Dr. Garodia wrote that Plaintiff has been suicidal "several times," and that as of her last visit with Dr. Garodia, Plaintiff was "still struggling with several chronic medical/psychological issues." Tr. 367. Accordingly, Dr. Garodia concluded that he did not "see [Plaintiff] getting to work full time in the future." Tr. 367.

The ALJ rejected Dr. Garodia's opinion because Dr. Garodia "failed to support the opinion with a persuasive explanation" and did not explain how Plaintiff's medical conditions "affect functional ability." Tr. 24. The ALJ is correct that Dr. Garodia's letter is of little value in assessing Plaintiff's specific functional limitations. While it is clear from Dr. Garodia's letter that he believes Plaintiff continues to struggle with multiple medical and psychological conditions, and therefore is unlikely to be able to work, such a conclusory opinion without further explanation is of little use to the Commissioner's function-by-function analysis. The ALJ appropriately rejected Dr. Garodia's opinion.

### III. **Mr. McDowell's Opinion**

Plaintiff finally argues the ALJ erred in discrediting the opinion of Rodney McDowell, LCSW. The parties begin by disputing whether the ALJ was required to cite clear and convincing reasons to reject Mr. McDowell's opinion because he worked under the supervision of acceptable medical sources, or whether the ALJ was merely required to cite reasons germane to Mr. McDowell's opinion because, as a licensed clinical social worker, Mr. McDowell was an "other source." See Molina, 674 F.3d at 1111-12. I need not resolve this issue, however, because even assuming the ALJ was required to cite only germane reasons to reject Mr. McDowell's opinion, I conclude the ALJ failed to do so.

15 - OPINION AND ORDER

Mr. McDowell completed a Mental Residual Functional Capacity Assessment in which he filled out a function-by-function assessment of Plaintiff's capabilities. Tr. 361-64. Along with noting many mild and moderate limitations, Mr. McDowell noted Plaintiff was severely limited in her abilities to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and be aware of normal hazards and take appropriate precautions. Tr. 362-63. In addition, Mr. McDowell found Plaintiff moderately-severely limited in her abilities to accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and respond appropriately to changes in the work setting. Tr. 363.

With the Mental Residual Functional Capacity Assessment, Mr. McDowell attached a letter providing a detailed history of his treatment of Plaintiff, discussing Plaintiff's psychological conditions, and concluding that Mr. McDowell does "not see how it is possible for [Plaintiff] to be able to work at this time." Tr. 365-66. The ALJ gave Mr. McDowell's opinion only "some weight" because the medical record and Plaintiff's testimony suggested her physical limitations were the primary cause of her disability and

it was unclear why Mr. McDowell thought Plaintiff could not work. Tr. 24-25.

The ALJ was incorrect in finding that Mr. McDowell's opinion was unclear as to why Plaintiff is unable to work.   To the contrary, Mr. McDowell's opinion is quite detailed as to Plaintiff's treatment history, psychological conditions, and functional limitations.

The ALJ's finding that Mr. McDowell's opinion was unsupported by Plaintiff's testimony and a medical record that focused on Plaintiff's physical conditions rather than mental impairments is not supported by substantial evidence.   Indeed, Plaintiff testified that she was "very much" depressed and had post-traumatic stress disorder from her husband's death that left her "pretty broken" and in therapy.   Tr. 38.   As a result, Plaintiff testified that at times she "stays in bed for days."   Tr. 43.   Moreover, there are several records of Plaintiff seeking mental-health treatment through her primary care physician.   E.g. Tr. 409, 433, 444-46, 449.   Finally, and most significantly, the administrative record contains more than 70 pages of records from St. Charles Medical Center detailing a two-and-a-half week stay in a mental hospital on

account of suicidal intent and serious psychological conditions.[1]
Tr. 488-559.

In sum, I conclude the ALJ's rejection of Mr. McDowell's
opinion because Plaintiff's testimony and the medical record
focused on Plaintiff's physical conditions is not supported by
substantial evidence.  The ALJ improperly rejected Mr. McDowell's
opinion.

## IV.  Credit-as-True

When the ALJ erroneously rejects testimony, the court must
remand for a calculation of benefits if:

> (1) the record has been fully developed and further
> administrative proceedings would serve no useful purpose;
> (2) the ALJ has failed to provide legally sufficient
> reasons for rejecting evidence, whether claimant
> testimony or medical opinion; and (3) if the improperly
> discredited evidence were credited as true, the ALJ would
> be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).  If those
three criteria are met, the court may only remand for further
proceedings if "the record as a whole creates serious doubt as to

---

[1] The ALJ did not have the benefit of the records from St.
Charles Medical Center because they were first submitted to the
Appeals Council despite being created more than one year before
the ALJ's hearing.  There is no indication why the records from
St. Charles Medical Center were not submitted to the ALJ, but it
is most unfortunate the ALJ did not have the opportunity to
consider this significant evidence.  Nonetheless, because the St.
Charles Medical Center records were considered by the Appeals
Council, I consider them among the medical record.  See Brewes v.
Comm'r Soc. Sec. Admin., 683 F.3d 1157, 1162 (9th Cir. 2012).

18 - OPINION AND ORDER

whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021.

Here, the record has been fully developed, further administrative proceedings would serve no useful purpose, and if the testimony of both Plaintiff and Mr. McDowell was credited-as-true, the ALJ would clearly be required to find Plaintiff disabled. After review of the record as a whole, I find no reason to have "serious doubt as to whether the claimant is, in fact, disabled" within the meaning of the Act. See id. Accordingly, this case must be remanded to the Commissioner for an immediate calculation of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation of benefits.

IT IS SO ORDERED.

DATED this _31_ day of October, 2014.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge

19 - OPINION AND ORDER